LAD/USAO #2021R00185

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT AUTHORIZING A DNA SAMPLE COLLECTION FROM DEVIN BOYD | Case No. 21-845-ADC |
| IN THE MATTER OF THE AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT AUTHORIZING THE SEARCH OF ONE CELLULAR PHONE AND ONE IPAD CURRENTLY AT 31 HOPKINS PLAZA, BALTIMORE, MARYLAND | Case No. 21-846-ADC |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Special Agent ("SA") George Max Ponte of the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

1. This affidavit is made in support of applications for two search warrants under Rule 41 of the Federal Rules of Criminal Procedure:

    a. The <u>first</u> warrant would authorize members of the FBI or ATF, or their authorized representatives, to obtain samples of Deoxyribonucleic Acid ("DNA") for comparison purposes in the form of saliva from Devin BOYD, a black male born on August 12, 1993, who is approximately 6'0," 160 pounds, with brown eyes and black hair, with an FBI No. ending in 1FD7, and a Maryland SID No. ending in 3063, further described in attachment A-1. BOYD is currently incarcerated at the Baltimore Central Booking and Intake facility, located at 300 E. Madison Street, Baltimore, Maryland 21202.

    b. The <u>second</u> warrant would authorize the search of one cellular telephone and one iPad, further described in Attachment A-2, both of which are currently in the custody of the bureau of Alcohol, Tobacco, Firearms, and Explosive ("ATF") at 31 Hopkins Plaza, Baltimore, Maryland 21201 (**SUBJECT DEVICES 1 and 2**, respectfully).

2. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested search warrants, I have not included every detail of every aspect of the investigation in which I have participated. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information

known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that **SUBJECT DEVICES 1 and 2** and BOYD's DNA contain evidence of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).

## AFFIANT BACKGROUND

4. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in offenses enumerated in Section 2516 of Title 18, United States Code.

5. I have been a Special Agent with the FBI since January 2020. Prior to joining the FBI, I was a police officer in Middletown, Rhode Island from December 2014 to December 2019. During that time, I participated in hundreds of arrests, searches, and criminal investigations. Since September 2020, I have been assigned to the FBI's Safe Streets Task Force in Baltimore, which investigates violations of federal drug and firearms statutes. I have assisted in investigations involving unlawful activities, including drug smuggling/trafficking, firearm offenses, and violent crime occurring in the District of Maryland. I have participated in search and seizure warrants for illegal narcotics and related paraphernalia. I have participated in several arrest operations for violations of state and federal narcotics and firearms statutes and have received specialized training in the area of illegal narcotics and firearm possession. In addition, I have reviewed taped

2

conversations, documents, and other records relating to drug trafficking, illegal firearm possession, and money laundering. Through my training, education, and experience, I have become familiar with the manner in which narcotics traffickers and firearm possessors will commonly use violence to further and protect their enterprise. I am familiar with the manners in which illegal drugs are transported, stored, and distributed; the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the manner in which narcotics traffickers store and conceal the proceeds of their illegal activities.

6. Based upon my training, experience, and participation in other investigations involving controlled dangerous substances and firearms offenses, I am familiar with the methods, habits, and terminology used by individuals who violate the federal drug and firearms laws. Specifically, I know the following:

    a. Cellular telephones and iPads are an indispensable tool to those who unlawfully possess and use illegal firearms. These individuals use iPads, cellular telephones, push-to-talk telephones, Short Message Service ("SMS"), electronic-mail, and similar electronic means and/or devices, often under fictitious names or names other than their own, in order to maintain contact with other conspirators, firearms possessors, and traffickers. Thus, these electronic devices hold valuable evidence of conversations between suspects regarding the unlawful possession, use, and trafficking of firearms; and

    b. Individuals who unlawfully possess and/or use firearms also use iPads and cellular devices to maintain records of their illegal activities, including telephone number "contact lists," address lists, photographs of firearms, and other personal identifiable information or information related to individuals and co-conspirators who may have assisted in the purchasing and storage of firearms and ammunition

7. Finally, based on my training and experience, I know that DNA can be found on items such as clothing and firearms, and can be compared to a sample of DNA from a known person. This comparison can help identify or eliminate suspects. I further know that the Baltimore City Forensics Lab will not test firearms for the presence of DNA (or do any subsequent comparison) without a standard to which it can be compared.

## **PROBABLE CAUSE**

8.     On March 10, 2021, Baltimore Police Department ("BPD") officers were patrolling the 1200 block of East Lafayette Avenue, when they observed Devin BOYD walking down the street. One of the officers knew BOYD had an open warrant for his arrest.[1] When BOYD noticed the officers, he quickly changed direction and began to walk northbound up the 1800 block of Hope Street. BOYD was holding his front waistband area. As the officers turned their car in BOYD's direction, BOYD again changed direction and began to walk southbound. He was still holding his front waistband area.

9.     Based on BOYD's movements, which made it appear that he was attempting to avoid contact with law enforcement, and the fact that he was holding his waistband area, officers believed BOYD was possibly armed with a weapon, so officers exited their car to investigate further. When they did, BOYD fled on foot. While pursuing BOYD, one officer observed BOYD remove a black object from his front waistband area (the same area he was holding while walking down the block). The object appeared to be a handgun. The officer subsequently heard a metal object hit the concrete near a house in the 1200 block of East Lafayette Avenue as he was chasing BOYD. BOYD was apprehended shortly thereafter.

10.    Officers canvassed the area for the heavy metal object and ultimately located a black Glock 19, 9 Gen 4 model 9mm handgun, with serial number BDMM131, in the yard of a house in the 1200 block of East Lafayette Avenue.

11.    The BPD Aviation Unit also responded to the scene and captured a thermal image of the firearm using a camera that senses heat signatures. The Aviation Unite observed that the

---

[1] BOYD had an open warrant for violating probation (Warrant Number 118123030), which was issued on February 16, 2021.

gun was glowing white, indicating that it was warm from someone's heat signature and, in turn, that it had recently been in someone's possession.

13. Officers also recovered a black iPhone with a cracked screen in a phone case (**SUBJECT DEVICE 1**) and a white iPad with a cracked screen (**SUBJECT DEVICE 2**) from BOYD.

13. Further investigation revealed that BOYD has been previously convicted of a crime punishable by imprisonment for a term exceeding one year. Specifically, BOYD was convicted in 2019 for CDS Distribution in the Circuit Court for Baltimore City and sentenced to 20 years, 19 suspended. Thus, at the time BOYD possessed the firearm on March 10, 2021, he was prohibited from possessing a firearm and/or ammunition that have traveled in interstate commerce and knew or should have known that he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

14. The firearm was test fired and determined to be operable, satisfying the definition of a firearm pursuant to 18 U.S.C. § 921. The firearm was manufactured outside the state of Maryland and traveled in interstate commerce prior to its recovery in Maryland.

15. The firearm was swabbed for the possible presence of epithelial cells. The swabs cannot be forwarded for DNA analysis until a standard for a suspect is obtained and a comparison is requested.

16. During a post-arrest interview, which began with BOYD being advised of and waiving his *Miranda* rights, BOYD told investigators that he had found the firearm earlier that day.

## BACKGROUND CONCERNING
## ELECTRONIC COMMUNICATIONS DEVICES

17. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. **SUBJECT DEVICES 1 and 2** have both digital storage capacity and digital camera capabilities.

18. Individuals engaged in firearms offenses often use cell phones and iPads to communicate with co-conspirators. These individuals will often use a combination of voice calls and text messages to coordinate meetings and/or the illegal purchase of firearms, and use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity.

19. Individuals who unlawfully possess firearms often place nominal control and ownership of telephones and iPads in names other that their own to avoid detection of those telephones by government agencies. Even though telephones and iPads are in the names of other people, those who unlawfully possess and use firearms retain actual ownership, control, and use of the telephone, exercising dominion and control over them.

20. Those who illegally possess and/or use firearms utilize different types of communication devices and change the numbers to these communication devices frequently. This is done to avoid detection by law enforcement personnel.

21. Cellular phones and iPads associated with individuals who unlawfully possess and/or use firearms include various types of evidence. Such devices may contain relevant text messages or other electronic communications; they may contain electronic address books listing the phone numbers and other contact information associated with co-conspirators; and they may contain other types of information.

22.     Individuals who unlawfully possess and/or use firearms often take photos of themselves with firearms, money, or high-end consumer items, like cars or watches. These "trophy" photos are often maintained on cellular telephones and iPads to be shared on social media, or as symbols of their success.

23.     Finally, the mere fact of a cellular phone's or iPad's call number, electronic serial number or other identifying information may be of evidentiary value as it may confirm that a particular cell phone is the phone identified during a wiretap, pen register, or other electronic investigation.

## FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATIONS DEVICES

24.     Based on my training and experience, I know that electronic devices such as cellular phones (smartphones) and iPads can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on **SUBJECT DEVICES 1 and 2** may still be stored on those devices, for various reasons, as discussed in the following paragraphs.

25.     As further described in Attachment B-2, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **SUBJECT DEVICES 1 and 2** were used, the purpose of their use, who used them, and when.

26.     There is probable cause to believe that this forensic electronic evidence might be on **SUBJECT DEVICES 1 and 2** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual

7

memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

27. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

28. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

29. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

30. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31.     Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

32.     Again, **SUBJECT DEVICES 1 and 2** remain in the custody of law enforcement. The only known specifics of each device requested for authorization to search are detailed in Attachment A-2 and the types of information expected to be recovered from the devices are listed in Attachment B-2.

## DNA AUTHORIZATION REQUEST

33.     Based on my training and experience, I believe BOYD's DNA will be on the firearm recovered during his arrest. A known a sample of his DNA is required in order to test and compare any and all DNA recovered. Accordingly, I am requesting authorization for a warrant to obtain samples of DNA for comparison purposes in the form of saliva from BOYD to compare to the swabs taken from the firearm that I believe was possessed by BOYD.

34.     Further, I respectfully request that the Court issue a warrant authorizing members of the ATF or FBI, or their authorized representatives, to obtain DNA samples from BOYD so that the DNA sample may be compared to the swabs taken from evidence recovered in this case

## CONCLUSION

35.     Based on the foregoing, there is probable cause to believe that BOYD's DNA and **SUBJECT DEVICES 1 and 2** contain evidence of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g).

36.     WHEREFORE, I respectfully request that the Court issue warrants authorizing (i) members of the FBI or ATF, or their authorized representatives, to obtain DNA samples from

BOYD in the form of saliva so that the DNA samples may be compared to evidence collected during the course of this investigation; and (ii) authorizing the search of the one cellular telephone and one iPad recovered from BOYD (*i.e.*, **SUBJECT DEVICES 1 and 2**) for the evidence and items described in attachment B-2.

*George M Ponte*
_____
Special Agent George Max Ponte
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. P. 4.1 and 41(d)(3) on March __23rd__, 2021.

_____
Honorable A. David Copperthite
United States Magistrate Judge

## ATTACHMENT A-1

### PERSON TO BE SEARCHED

Devin BOYD
YOB: 1993
Currently residing at the Baltimore Central Booking and Intake facility
located at 300 E. Madison Street, Baltimore, Maryland 21202
Last four digits of FBI number: 1FD7
Last four digits of MD SID: 3063



## ATTACHMENT A-2

## ITEMS TO BE SEARCHED

A black iPhone with a cracked screen in a phone case, with International Mobile Equipment Number 356086093917069 ("**SUBJECT DEVICE 1**"), currently in the custody of ATF at 31 Hopkins Plaza, Baltimore, Maryland.

A white iPad with a cracked screen with FCC ID: BCGA1566 and serial number DMPR4BSWGSVY ("**SUBJECT DEVICE 2**"), currently in the custody of ATF at 31 Hopkins Plaza, Baltimore, Maryland.

## ATTACHMENT B-1

### Items to be Seized

Buccal (oral) swabs of the inside of BOYD's mouth limited to the extent where sufficient samples of DNA are obtained.

## ATTACHMENT B-2

## ITEMS TO BE SEIZED

All records contained in the items described in Attachment A-2, which constitute evidence of violation of 18 U.S.C. § 922(g), including but not limited to that outlined below:

1. Contact logs that refer or relate to the user of any and all numbers on **SUBJECT DEVICES 1 and 2.**

2. Call logs reflecting date and time of received calls.

3. Any and all digital images and videos of persons associated with this investigation.

4. Text messages to and from **SUBJECT DEVICES 1 and 2** that refer or relate to the crimes under investigation.

5. Records of incoming and outgoing voice communications that refer or relate to the crimes under investigation.

6. Voicemails that refer or relate to the crimes under investigation.

7. Voice recordings that refer or relate to the crimes under investigation.

8. Any data reflecting **SUBJECT DEVICES 1 and 2's** location.

9. Contact lists.

10. Any and all records related to the location of the user(s) of the devices.

11. For **SUBJECT DEVICES 1 and 2**:
    a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
    b. evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
    c. evidence of the lack of such malicious software;
    d. evidence of the attachment to **SUBJECT DEVICES 1 and 2** of other storage devices or similar containers for electronic evidence;
    e. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;
    f. evidence of the times **SUBJECT DEVICES 1 and 2** were used;

      g. passwords, encryption keys, and other access devices that may be necessary to access **SUBJECT DEVICES 1 and 2**;
      h. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the **SUBJECT DEVICES 1 and 2**; and,
      i. contextual information necessary to understand the evidence described in this attachment.

With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

1. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

2. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

3. "scanning" storage areas to discover and possible recover recently deleted files;

4. "scanning" storage areas for deliberately hidden files; or

5. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps

to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated, absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.